UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TIMOTHY J. GOLDEN,

                Plaintiff,

      v.

VERIZON NEW YORK INC.,

                Defendant.

No. 22-CV-5757 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Timothy J. Golden, proceeding pro se, brings this action against his former employer, Defendant Verizon New York Inc. ("Verizon"). Golden alleges that, after he sustained a serious on-the-job injury, Verizon failed to accommodate his resulting disability and induced him into an early retirement, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and the New York State Human Rights Law ("NYCHRL"), N.Y. Exec. Law §§ 290-297. Now before the Court is Verizon's motion to dismiss the complaint. For the reasons that follow, the motion is granted.

### BACKGROUND[1]

Timothy J. Golden worked for Verizon as a Field Technician for nearly twenty years before an on-the-job injury cut his career short. Dkt. No 1 ("Compl.") ¶¶ 1, 10. For decades, Golden lifted and carried a 28-foot, 74-pound ladder daily, as his job required. *Id.* ¶¶ 1, 19. But, on November 2, 2009, Golden sustained serious injuries to his back, neck, and right shoulder. *Id.* ¶ 10. While Golden stood on his company truck's elevated platform, a "rusty, old bolt broke," which

---

[1] The following facts are drawn from Golden's complaint and the attached exhibits which, on a motion to dismiss, the Court must assume to be true. *See Lynch v. United States*, 952 F.3d 67, 74-75 (2d Cir. 2020).

dislodged a safety handle and caused Golden to fall into the road. *Id.* Golden informed his supervisor of the accident and followed company protocol: he worked with managers to photograph the broken bolt and safety handle, completed an on-duty accident report, and visited several doctors. *Id.* ¶ 11. Golden sustained serious injuries from his fall, including suffering from bulging disks and herniated discs in his spine, which rendered him unable to return to work "full duty" because he could no longer "lift and carry and walk with heavy objects." *Id.* ¶¶ 11, 16-19. In the meantime, Golden began receiving New York State Workers' Compensation from Verizon. *Id.* ¶ 15.

In 2010, Verizon required Golden to undergo five independent medical examinations, all of which determined that he had a moderate disability but was capable of sedentary work. *Id.* ¶¶ 20-25. Three years later, Golden attended a deposition at the New York State Workers' Compensation Board, and on March 28, 2013, a Workers' Compensation law judge found that Golden had a "Permanent Disability and was capable of sedentary work." *Id.* ¶¶ 38-39. The judge also noted that Golden's educational background (such as his degree in Telecommunications) qualified him "to do inside work and outside work at Verizon, as an indoor technician and as an outdoor technician." *Id.* ¶ 39. But Verizon did not return him to work or, he alleges, engage him "in the ADA interactive process to identify an appropriate and effective reasonable accommodation." *Id.* ¶ 40. Despite Golden's repeated requests, Verizon failed to offer him a reassignment or notify him of any vacant positions. *Id.* ¶¶ 40, 51.

In March 2014, Golden made a disability discrimination complaint against Verizon with the U.S. Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 44. Two months later, on May 12, 2014, the official EEOC charge of discrimination was filed. Dkt. No. 35 ("Mishra Decl.") Ex. B ("2014 EEOC Charge"). After Verizon ordered Golden to undergo another medical

examination, Golden's manager informed MetLife Disability—the entity responsible for approving work absences due to work accidents—that "a restricted return to work could not be accommodated." Compl. ¶¶ 13, 45-46. On June 9, 2015, the EEOC mailed Golden a right-to-sue letter, stating that it was "unable to conclude that the information obtained establishes violations of the statues." Mishra Decl. Ex. C. The letter also informed Golden that he "may file a lawsuit … under federal law based on this charge" and that his lawsuit "must be filed within 90 days of [his] receipt of this notice." *Id.* Golden, however, did not file suit because he says he was "unable to obtain legal counsel" and "not aware" that he could proceed pro se. Compl. ¶ 50.

From 2015 through 2017, Verizon continued to deny Golden's requests to accommodate his disability or otherwise return him to work. *Id.* ¶ 51. Instead, Verizon offered him a lump sum payment if he agreed to retire. *Id.* ¶ 53. Verizon also informed him that it "would assist [him] in securing Social Security Disability benefits." *Id.* After receiving these assurances, Golden accepted his lump sum retirement settlement on January 26, 2018, *id.* ¶ 56, which included a retirement distribution of $502,018.98, Dkt. No. 35 ("Fasolo Decl.") Ex. A. A year later, in May 2019, Golden learned that he was ineligible to receive Social Security disability benefits "because Verizon did not return [him] to work for 5 of the last 10 years" before his retirement. Compl. ¶ 57. Golden alleges that Verizon "should have known" about his ineligibility "before [he] was forced to accept a Lump Sum retirement," so he initiated a grievance to return him to work with a reasonable accommodation. *Id.* ¶ 58.

After Verizon rejected his grievance in 2020, Golden initiated a second disability discrimination complaint with the EEOC in November 2020. *Id.* ¶ 60. On March 9, 2021, the official EEOC charge of discrimination was filed. *Id.* ¶ 61; Mishra Decl. Ex. D ("2021 EEOC Charge"). Golden received a second right-to-sue letter from the EEOC on April 7, 2022, *id.* ¶ 62,

and he filed this lawsuit 89 days later, on July 5, 2022, *id.* at 7. Defendant Verizon now brings a motion to dismiss, arguing that Plaintiff Golden's claims are time-barred and fail to state a claim. Dkt. No. 34 ("Def. Br.") at 5-11.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[2] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To make that determination, the Court must "accept as true all factual allegations … but [is] not required to credit conclusory allegations or legal conclusions couched as factual … allegations." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020). Where a plaintiff proceeds pro se, the complaint must be "liberally construed to raise the strongest arguments they suggest." *Jain v. McGraw-Hill Companies, Inc.*, 506 F. App'x 47, 48 (2d Cir. 2012). Dismissal is appropriate "'when a defendant raises a statutory bar,' such as lack of timeliness, 'as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015).

## DISCUSSION

### I.     Federal Claims

The ADA prohibits employers from discriminating against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, omissions, and alterations.

4

of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  Neither party contests that Golden is a qualified individual with a disability under the ADA.

### A.  Failure to Accommodate and Intentional Discrimination Claims

First, Golden brings a failure to accommodate claim under the ADA.  This claim arises when an employer refuses to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."  42 U.S.C. § 12112(b)(5)(A); *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009).  Here, Golden argues that Verizon failed to reasonably accommodate his disability when it denied his repeated requests to be assigned to a Light-Duty position, which would not have required carrying heavy ladders. Compl. ¶¶ 51, 70-73.

Second, Golden appears to assert a separate but related claim under the ADA: intentional discrimination, otherwise known as disparate treatment.  *See Quad Enterprises Co., LLC v. Town of Southold*, 369 F. App'x 202, 205 (2d Cir. 2010).  Unlawful intentional discrimination occurs when a defendant "simply treats some people less favorably than others" because of a protected characteristic, such as a disability.  *Brooklyn Ctr. for Psychotherapy, Inc. v. Philadelphia Indem. Ins. Co.*, 955 F.3d 305, 311 (2d Cir. 2020).  To succeed, a plaintiff must show that "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered [an] adverse employment action because of his disability." *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71 (2d Cir. 2019).  Here, Golden alleges that, because of his disability, Verizon "forc[ed]" him to accept an unfavorable retirement settlement after promising to "assist" him in securing Social Security disability benefits.  *Id.* ¶¶ 53-55.  According

to Golden, Verizon "should have known" he was ineligible for these benefits and, because of his disability, they induced him into accepting its lump sum retirement offer by way of such misrepresentations. *Id.* ¶¶ 57-58.[3]

### B. Statute of Limitations

As with all ADA claims, plaintiffs raising a failure to accommodate or intentional discrimination claim must first have filed an administrative complaint (i.e., a "charge of discrimination") with the EEOC within 300 days "after [an] alleged unlawful employment practice occur[s]." 42 U.S.C. § 2000e–5(e)(1); 42 U.S.C. § 12117(a); *see Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999). To bring a timely claim in federal court, a plaintiff must then file a lawsuit within 90 days of receiving a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e–5(f)(1); *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011). Both the 300-day and the 90-day requirements function as statutes of limitations, though they are subject to certain defenses, including equitable tolling and equitable estoppel. *Williams v. Wellness Med. Care, P.C.*, 2013 WL 5420985, at *4 (S.D.N.Y. Sept. 27, 2013); *see Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

As an initial matter, it is unclear from the face of the complaint if Golden's 2014 EEOC Charge was filed within the required 300-day period. Golden asserts that, on March 28, 2013, a State Workers' Compensation law judge notified Verizon that he had a "Permanent Disability and was capable of sedentary work." Compl. ¶ 39. Some time thereafter, without specifying when, Golden alleges that "Verizon did not offer him a reassignment" and otherwise did not engage him in the "ADA interactive process to identify an appropriate and effective reasonable

---

[3] *See* Dkt. No. 45 ("Pl. Br.") at 4 ("Had Plaintiff known in January 2018 that he would not qualify for social security disability benefits because Defendant had never returned him to work, he would never have accepted the lump sum retirement and would have continued pursuing a reasonable accommodation under the ADA.").

accommodation." Compl. ¶ 40. Although these assertions may amount to an "alleged unlawful employment practice" under the ADA, Golden does not identify *when* the discriminatory act "occurred," 42 U.S.C. § 2000e–5(e)(1).[4] Accordingly, without more information, the Court cannot determine if the 2014 EEOC Charge was timely filed.

Even if the 2014 EEOC Charge were timely, however, Golden failed to file suit within 90 days of receiving the EEOC's right-to-sue letter on June 9, 2015. Compl. ¶ 50. The letter itself informed him that he "may file a lawsuit … under federal law" and that such a suit "must be filed within 90 days of your receipt of this notice; or your right to sue based on this charge will be lost." Mishra Decl. Ex. C. The letter also included instructions on how to proceed if Golden "cannot afford or [is] unable to obtain a lawyer." *Id.* Although Golden now argues that he "was unable to obtain legal counsel and was not aware that [he] could proceed pro se," he fully admits that he "did not pursue the case in federal court" within 90 days. Compl. ¶ 50. Golden's failure to accommodate claim arising from the 2014 EEOC Charge is thus time-barred.

Golden suggests that the 2014 EEOC Charge is not the "operative EEOC complaint," Dkt. No. 45 ("Pl. Reply Br.") at 2, but his 2021 EEOC Charge suffers from similar procedural defects. Golden filed his second charge of discrimination on March 9, 2021. Compl. ¶ 61; Mishra Decl. Ex. D. For this charge to be timely, an alleged unlawful employment practice must therefore have occurred on or after May 13, 2020 (i.e., 300 days before March 9, 2021). *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 102 (2002) (noting that "each discrete act starts a new clock for filing charges alleging that act"). But Golden has not plausibly alleged any discriminatory act that

---

[4] For purposes of his failure to accommodate theory, Golden's claim accrued on the day that Verizon rejected his request for reasonable accommodation. *See Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 135 (2d Cir. 2003). Because the 2014 EEOC Charge was filed on May 12, 2014, it would be timely if Golden had alleged that this rejection occurred on or after July 16, 2013 (i.e., 300 days before May 12, 2014).

7

occurred in this window.[5]  In any event, the 2021 EEOC Charge is time-barred because, according to the complaint, Golden has not had an employee-employer relationship with Verizon since his January 26, 2018 retirement.[6]

Although Golden failed to meet the 300-day requirement for both EEOC Charges and the 90-day requirement following the 2014 EEOC Charge, these statutes of limitations are subject to two relevant doctrines that can preclude a defendant from asserting an otherwise applicable defense: equitable tolling and equitable estoppel.  *See Zipes*, 455 U.S. at 393.  The Court considers each in turn.

### 1. Equitable Tolling

The equitable tolling doctrine allows courts to "extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances."  *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996).  Courts only apply the doctrine in rare and exceptional situations, where a plaintiff has been "prevented in some extraordinary way from exercising his rights."  *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985); *see Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000).  To take advantage of the doctrine, a plaintiff "bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of

---

[5] Indeed, as to his intentional discrimination claim based on Verizon's alleged misrepresentations, it is not clear which conduct Golden is alleging constitutes an "adverse employment action" at all.  *Fox*, 918 F.3d at 71.

[6] Verizon argues, in the alternative, that the 2021 EEOC Charge is improper because it "plainly realleges the same claims in the 2014 EEOC Charge" and is thus "wholly duplicative." Dkt. No 46 ("Def. Reply Br.") at 1-2.  Because the Court holds that Golden's 2021 EEOC Charge is time-barred, it need not address this alternative ground for dismissal.  *See Lopez v. Bonanza.com, Inc.*, 2019 WL 5199431, at *5 n.14 (S.D.N.Y. Sept. 30, 2019).

the obstacle impeding compliance with a limitations period." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011). The doctrine can be invoked, for instance, "in cases where the plaintiff is ignorant of his cause of action because of the defendant's fraudulent concealment." *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 49-50 (2d Cir. 1985); *cf. Dillman v. Combustion Eng'g, Inc.*, 784 F.2d 57, 60 (2d Cir. 1986) (finding that a party was not entitled to equitable tolling where he "simply did not present any evidence that he was unaware of his cause of action [and] was aware of his statutory rights").

Here, the equitable tolling doctrine does not apply. At the outset, it does appear that Golden acted with reasonable diligence throughout the period he seeks to toll. Since his on-duty work accident, Golden remained forthright with Verizon about his injuries; followed all protocols to confirm his disability; maintained open communication with his managers, MetLife Disability, and his local union; and made many attempts to secure a reasonable workplace accommodation, all without the expertise of counsel. *See* Compl. ¶¶ 10-62. Golden therefore met the "diligence" threshold, especially as the "standard is not 'extreme diligence' or 'exceptional diligence,' [but] *reasonable* diligence." *Baldayaque v. United States*, 338 F.3d 145, 153 (2d Cir. 2003) (noting that the Court should ask if a plaintiff acted "as diligently as reasonably could have been expected *under the circumstances*"). Nevertheless, Golden has not established that equitable tolling is appropriate for two primary reasons.

First, no extraordinary circumstances stood in Golden's way from timely filing his 2014 EEOC Charge, his 2021 EEOC Charge, or his current lawsuit. He offers no indication that a rare and exceptional reason prevented him from filing his original EEOC Charge within 300 days of requesting a workplace accommodation. Nor has he provided a legally compelling explanation for why he waited over 1,138 days to file his second EEOC Charge after effectively being forced

9

to retire.  Compl. ¶¶ 56, 61.  Although Golden maintains that Verizon promised to help him secure Social Security disability benefits it should have known were unavailable to him, he nonetheless waited at least 600 days to file the EEOC Charge even after learning that he did not qualify.  Compl. ¶¶ 57, 61.  And, while Golden continued to pursue his rights with a union grievance during this period, the pendency of a collateral grievance does not toll a statute of limitations.  *Woodruff v. Nat'l R.R. Passenger Corp.*, 403 F. App'x 624, 625 (2d Cir. 2010).  Finally, Golden maintains that he did not file suit after his 2014 EEOC Charge because he was unaware that he could proceed pro se, but, as a legal matter, "ignorance of law and legal procedure [is] not so 'exceptional' as to merit equitable tolling."  *Nash v. McGinnis*, 2005 WL 1719871, at *3 (S.D.N.Y. July 22, 2005); *see Bowman v. Walsh*, 2007 WL 2815711, at *2 (E.D.N.Y. Sept. 25, 2007) (collecting cases).

Second, Golden's delayed filings cannot be tolled because he has not plausibly alleged that he was unaware of his cause of action, or that "fraudulent concealment" by Verizon created ignorance as to his statutory rights.  *Cerbone*, 768 F.2d at 50.  To the contrary, Golden's consistent communication with his local union, his subsequent grievances, and his eventual $500,000 retirement settlement with Verizon all evince a general understanding of his right to reasonable workplace accommodations.  And the only evidence of possible concealment by Verizon—its alleged representations about his Social Security disability eligibility—does not alter Golden's awareness of his rights under the ADA.  *See Dillman*, 784 F.2d at 60.

The Court therefore finds that Golden's time-barred actions cannot be salvaged through equitable tolling.

### 2. Equitable Estoppel

Unlike equitable tolling, equitable estoppel "is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay in bringing

his lawsuit." *Cerbone*, 768 F.2d at 50. "The doctrine properly may be invoked in a case in which the employer has misrepresented the length of the limitations period or in some other way has 'lulled the plaintiff into believing that it was not necessary for him to commence litigation.'" *Dillman*, 784 F.2d at 61. Courts apply equitable estoppel, for instance, where an employer falsely "assured the employee that it will settle" a discrimination claim, the employee "relies on the representation," and the employee then delays filing an EEOC Charge or bringing a lawsuit. *Id.* at 61. To succeed, a plaintiff must show that "(1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment." *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995); *see Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001) (noting that the doctrine is applied when "the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct.").

But equitable estoppel will not apply in cases where an employer "in good faith" offers a departing employee "severance payments and retirement benefits." *Dillman*, 784 F.2d at 61. Further, even if a plaintiff establishes that an employer's deceptive conduct resulted in delay, "the plaintiff must still bring his action within a reasonable time after actual or constructive knowledge of the misrepresentation." *Buttry*, 68 F.3d at 1494. Although this reasonableness is evaluated on a case-by-case basis, "a good benchmark for comparison is the 'unused' portion of the limitations period." *Id.*[7]

---

[7] For example, "if three months elapse between accrual of the cause of action and the misrepresentation creating the estoppel, and if the applicable statute of limitations is one year, then … the date nine months following the plaintiff's discovery of the misrepresentation will provide a good starting point for evaluating the reasonableness of the plaintiff's filing." *Id.*

11

To the extent that Golden seeks to invoke the equitable estoppel doctrine, the Court finds that it does not apply. He asserts that, in November 2017, Verizon "offered [him] a lump sum payment" if he agreed to retire and falsely promised "that Verizon would assist [him] in securing Social Security Disability benefits." Compl. ¶ 53. "[L]iberally construed to raise the strongest arguments," *Jain.*, 506 F. App'x at 48, Golden plausibly asserts that Verizon made a misrepresentation of fact—that Verizon would assist him in securing Social Security disability benefits, when in fact he was ineligible. He also plausibly maintains that he reasonably relied on this representation, agreeing to accept a lump sum retirement soon after Verizon provided these false assurances. But Golden cannot overcome two additional obstacles.

First, Golden does not allege that Verizon acted in bad faith. He does not claim, for instance, that Verizon *knew* he was ineligible for benefits, only that Verizon "should have known." Compl. ¶ 58. It is therefore plausible that Verizon genuinely believed that it would assist Golden in securing benefits and only later learned that he did not qualify. *See Dillman*, 784 F.2d at 61 (holding as a matter of law that equitable estoppel cannot apply where an employer's settlement offers "were good faith attempts to ameliorate the effects of appellant's termination.").

Second, even if Verizon did act in bad faith, Golden still waited at least 600 days to bring an action after having actual knowledge of Verizon's misrepresentation. As alleged, Plaintiff learned that he did not qualify for Social Security disability benefits in May 2019. Compl. ¶ 57. Therefore, even assuming he became aware of the misrepresentation on May 31, 2019, Golden still waited until March 9, 2021—648 days later—to bring his EEOC charge. Since 648 days is more than double the original 300-day limitations period, *see* 42 U.S.C. § 2000e–5(e)(1), he failed to bring his action within a reasonable time. And he has provided no reasonable—legally applicable—explanation for this delay. Golden contends that, after learning that he did not qualify

12

for Social Security disability benefits, he "continued to pursue his rights under the ADA by filing another grievance with his union." Pl. Reply Br. at 4. Verizon thereafter "controlled the speed of the grievance process" and it was not until May 19, 2020, that Golden learned his grievance was denied. *Id.* But, as discussed above, grievance proceedings do not toll the limitations period. *See Woodruff*, 403 F. App'x at 625; *Bates v. Long Island R.R.*, 997 F.2d 1028, 1037 (2d Cir.1993). Golden also makes no suggestion that he delayed filing an EEOC charge "for a reasonable period while he wait[ed] to learn if his employer intend[ed] to honor the promise of reinstatement." *Cerbone*, 768 F.2d at 49. To the contrary, Verizon had rejected his prior grievance, Compl. ¶ 42, and Golden does not assert that Verizon falsely "assured" him that it would "settle [his] claim by reinstatement," *Dillman*, 784 F.2d at 61. Golden's complaint has not alleged conduct amounting "to the type of bad faith, dilatory actions that require equity to step in and estop a statute of limitations defense." *Id.*; *see Buttry*, 68 F.3d at 1494 (noting that equitable estoppel "cannot indefinitely extend the limitations period."). Golden thus cannot avail himself of the equitable estoppel doctrine.

Because the Court finds that all of Golden's federal claims are time-barred, they must be dismissed.

## II.   State Claims

Golden also brings claims under New York State law. First, his complaint alleges that Verizon's failure to accommodate his disability violates the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290-297. Second, the facts of his complaint may give rise to promissory estoppel and fraudulent inducement claims under New York State law.[8]

---

[8] Under New York law, the doctrine of promissory estoppel allows a party to recover based on a promise that it detrimentally relied upon. *See Joshi v. Trustees of Columbia Univ. in City of New York*, 2018 WL 2417846, at *8 (S.D.N.Y. May 29, 2018). A plaintiff can recover if he proves "1) a clear and unambiguous

However, as there are no longer any federal claims in this action, and "with due consideration of concerns of judicial economy, convenience and fairness," this Court declines to exercise supplemental jurisdiction over Golden's state law claims. *Olle v. Columbia Univ.*, 332 F. Supp. 2d 599, 620 (S.D.N.Y. 2004), *aff'd*, 136 F. App'x 383 (2d Cir. 2005) (citing 28 U.S.C. § 1367(c)(3)). Although the Court has discretion to exercise supplemental jurisdiction over state law claims, "[i]n general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." *Marcus v. AT & T Corp.*, 138 F.3d 46, 57 (2d Cir.1998). Because this case is at an early stage, prior to discovery, "considerations of judicial economy and convenience favor dismissal." *Oles v. City of New York*, 2022 WL 1808905, at *10 (S.D.N.Y. June 2, 2022), *aff'd*, 2023 WL 3263620 (2d Cir. May 5, 2023). The "balance of these factors indicates that a case properly belongs in state court," *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988), and Golden may pursue his state law claims there.

## CONCLUSION

For the foregoing reasons, Verizon's motion to dismiss Golden's complaint is granted. The parties shall appear before the Court on **March 8 at 3:30 p.m.** for an in-person conference to discuss whether the Court should grant Golden leave to amend his complaint. If this date or time is inconvenient for either party, they shall promptly notify the Court. The Court also recommends

---

promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." *Christian v. TransPerfect Glob., Inc.*, 2018 WL 4571674, at *8 (S.D.N.Y. Sept. 24, 2018). Similarly, fraudulent inducement claims require a plaintiff to show "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001). In New York, both promissory estoppel and fraudulent inducement claims have statutes of limitations of six years. *See Huang v. Siam Com. Bank Pub. Co.*, 247 F. App'x 299, 301 (2d Cir. 2007). Here, Golden's allegation that Verizon misrepresented his eligibility for Social Security disability benefits may support promissory estoppel and fraudulent inducement claims.

that Golden convene with the New York Legal Assistance Group ("NYLAG") to discuss whether a NYLAG attorney is willing and able to join him at the March 8th conference.

The Clerk of Court is respectfully directed to mail a copy of this Order to Mr. Golden and to terminate the motion pending at Dkt. No. 33.

Dated:   February 16, 2024
         New York, New York

                                            Hon. Ronnie Abrams
                                            United States District Judge